Marie Lisette Garcia VEGA, Appellant,

v.

The STATE of Texas.

No. 337–01.

Court of Criminal Appeals of Texas,
En banc.

June 26, 2002.

Rogelio Garza, Edinburg, for appellant.

Theodore C. Hake, Assist. DA, Edinburg, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

JOHNSON, J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, HOLCOMB and COCHRAN, JJ., joined.

In late December 1994, appellant and her boyfriend were implicated in a capital murder committed in Starr County, Texas. They fled to Chicago, Illinois, to stay with the boyfriend's aunt. Appellant was sixteen years old at the time of the charged offense. Texas authorities learned from relatives of appellant's boyfriend in Starr County that the two suspects were staying in Illinois. Starr County deputies sent a teletyped message to the Chicago Police Department, advising that Texas warrants had been issued for the two suspects. The message contained the address and telephone number of the home in which the Texas deputies believed appellant was staying. The Chicago police arrested appellant at that address.

Following Illinois law, the police obtained a written statement from appellant. It is undisputed that, while correct under Illinois law, the procedures followed in obtaining the statement, as well as the format of the statement itself, were not in compliance with Title 3 of the Texas Family Code. Appellant claims that, because the statement does not comply with Texas law, it was inadmissible at trial. The state argues that, because appellant was in Illi-

nois when she gave the statement, Illinois law should apply and that the statement was admissible under Illinois law.

■■ In holding that appellant's statement was inadmissible, the court of appeals relied upon our holding in *Davidson v. State*, 25 S.W.3d 183 (Tex.Crim.App. 2000), to guide its analysis as to the admissibility of appellant's confession. *Vega v. State*, 32 S.W.3d 897, 901 (Tex.App.-Corpus Christi 2000). In *Davidson*, we held that, because art. 38.22 § 3(a)[1] of the Texas Code of Criminal Procedure was procedural in nature, a trial judge is required to apply Texas law to determine the admissibility of an oral confession obtained in another state. *Davidson*, 25 S.W.3d at 185–86. We also held that because the mandatory requirement of art. 38.22, § 3(a), that an oral custodial statement must be recorded before it can be used against a defendant, was not followed by the authorities in Montana, appellant's oral confession was inadmissible at his Texas trial. *Id.* at 186.[2]

Although art. 38.22 § 3(a) of the Code of Criminal Procedure and Title 3 of the Family Code deal with the same general subject, the persons involved and the objectives of the two provisions are different. *Vasquez v. State*, 739 S.W.2d 37, 42 (Tex. Crim.App.1987). Like the current version, the 1994 version of Title 3, Juvenile Justice Code, began with a statement of purpose and interpretation. In pertinent part, section 51.01 stated that the title "shall be construed" to "to protect the welfare of the community and to control the commission of unlawful acts by children," and "to provide a simple judicial procedure through

which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced." TEX. FAM.CODE ANN. § 51.01 (1994). Unlike the language in art. 38.22, the legislature did not mandate that Title 3 be "strictly" construed.

■■ The holding in *Davidson* applies here only if art. 38.22 prevails over Title 3 of the Family Code. Here, the challenged statement was written and therefore did not violate the provisions of art. 38.22. In addition, this Court has held that, pursuant to the Code Construction Act, the sections of the Family Code relevant to confessions prevail over art. 38.22. *Lovell v. State*, 525 S.W.2d 511, 514 (Tex.Crim.App. 1975). Thus, it is Title 3 that controls issues concerning juvenile confessions, not art. 38.22. *See Griffin v. State*, 765 S.W.2d 422, 427 (Tex.Crim.App.1989). This is not a *Davidson* case by statute, circumstances, or command to "strictly construe." *Davidson* is, therefore, inapplicable here. Because appellant was a juvenile at the time she gave her statement, its admissibility must be determined under Title 3 of the Family Code.

■■ Traditional conflict-of-law principles prescribe that issues that are strictly procedural in nature are governed by the laws of the forum state, whereas issues that are substantive in nature require an analysis of which state has the most significant relationship with the communication in question. *Gonzalez v. State*, 45 S.W.3d 101, 104 (Tex.Crim.App.2001) *citing* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 (1971). A substantive right has

---

**1.** Texas Code of Criminal Procedure art. 38.22 governs when an oral statement may be used against an accused.

**2.** Under *Boykin v. State*, 818 S.W.2d 782, (Tex.Crim.App.1991), we are required to fol-

low the plain language of a statute in most cases, and the statute stated that "the courts of this state *shall strictly construe*" the subsection at issue in *Davidson*. (Emphasis added.)

been defined by this Court as a right to the equal enjoyment of fundamental rights, privileges, and immunities or a right that can be protected or enforced by law. *Gonzalez,* 45 S.W.3d at 106 n. 8, *citing* BLACK'S LAW DICTIONARY (5th ed.1983 & 7th ed.1999). A procedural right is a right that helps in the protection or enforcement of a substantive right. *Gonzalez* at 106 n. 8 *citing* BLACK'S LAW DICTIONARY (7th ed.1999).

Here, the state argues that Title 3 is substantive in nature because it arose out of the desire to bestow constitutional rights and protections upon juveniles facing delinquency proceedings. Appellant, on the other hand, says that Texas courts and the Texas legislature have mandated that the Family Code's procedural provisions on the taking of a juvenile statement be strictly followed and that this Court has held that juvenile confessions warrant special procedural considerations and protections. *See e.g. Comer v. State,* 776 S.W.2d 191 (Tex.Crim.App.1989); *Vie Le v. State,* 993 S.W.2d 650 (Tex.Crim.App.1999).

█ There are, under Texas conflict-of-law principles, several factors to consider in determining which jurisdiction has the most significant relationship to the case, including: 1) where the injury or unlawful conduct occurred; 2) the place where the relationship between the parties is the strongest; 3) the number and nature of contacts that the non-forum state has with the parties and with the transaction involved; 4) the relative materiality of the evidence that is sought to be excluded; and 5) the fairness to the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145 (1971); *Gonzalez,* 45 S.W.3d at 104 n. 4 (Tex.Crim.App.2001) *citing* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 139 (1971).

Here, a Texas resident is charged with an offense committed in Texas, and the non-forum's contact with the parties was limited to one occasion on which apparently unrequested questioning was done and a highly material statement obtained. The statement was obtained in Illinois, but Illinois has no interest in the offense or appellant. All these factors militate for application of Texas law. Only resolution of the issue of fairness is not obvious.

Illinois has a similar method of determining which state has the most significant relationship to the case. The Illinois Supreme Court found several factors important in determining which state's law would apply: where the crime was committed, where the crime was being prosecuted, where the defendant resided, in which state the defendant maintained his citizenship, where the majority of witnesses resided, and who would testify at trial. *People v. Saiken,* 49 Ill.2d 504, 275 N.E.2d 381, 385 (1971). All of these factors also favor the application of Texas law to substantive issues. Because the conflict-of-law schemes of both states militate for the application of Texas substantive law, the question of which directives in Title 3 are substantive and which procedural is not relevant here.

As set out in the opinion of the court of appeals, Appellant raised thirteen complaints in regard to violation of the Texas Family Code.

Issue 1: § 52.02;[3] appellant was not taken without unnecessary delay to a place designated in this section.

Issue 2: § 52.025;[4] Chicago police failed to interview appellant in an approved juvenile processing center.

---

**3.** Now TEX. FAM.CODE ANN. § 52.02(a) (2002).

**4.** Now TEX. FAM.CODE ANN. § 52.025(a) (2002).

■ Issue 8: §§ 51.12 & 52.025;[5] appellant was not detained in a facility approved by Texas authorities.

Appellant was taken to an equivalent Illinois facility. To hold that such actions were not sufficient to satisfy Texas' concerns would make impossible any apprehension of a Texas juvenile offender anyplace outside of Texas and would not advance Texas public policy as expressed in § 51.01.

■ Issue 3: § 51.09 & 52.04;[6] Chicago police failed to have an authorized officer of the Texas juvenile court decide whether appellant should be further detained.

Chicago police arrested appellant under a Texas warrant that included a no-bond condition. Illinois authorities had no discretion to release her. 705 ILL. COMP. STAT. 405/5–8 (1994).

■ Issue 4: § 51.09;[7] appellant's written statement does not contain all of the warnings required.

The warnings set out in § 51.09(b)(1)(A-D) are essentially the *Miranda* warnings. Appellant received those warnings at least three times. Additional warnings in § 51.09(b)(1)(E-F) required that a child over the age of 15 be told that he or she could be transferred to adult court for trial, and, if involved in a murder, that commitment to the Youth Commission could include transfer to adult prison. Ap-

pellant was informed of Illinois law, which while technically incorrect, accurately conveyed the possibility of being treated as an adult when accused of murder.

■ Issue 12: § 51.12; appellant was detained in an area where adults arrested for, or charged with, a crime are detained.

The language of this subsection is "a child shall not be detained in or committed to a compartment of a jail or lockup in which adults arrested for, charged with, or convicted of crime are detained or committed, nor be permitted contact with such persons."[8] A reasonable inference is that the legislature intended to prohibit putting a juvenile into circumstances in which the juvenile might be victimized by adult offenders. This is supported by the current § 51.12(f), which states that a child who is detained in a building which contains an area of secure confinement "shall be separated by sight and sound from adults detained in the same building." TEX. FAM. CODE ANN. § 51.12(f) (2002). Appellant was held in an interrogation room. She was at all times kept separate from adult offenders.

As to the above complaints, Illinois authorities, by following Illinois law, also complied with Texas law to the extent necessary to carry out Texas' intended purpose and public policy. We now address appellant's remaining complaints.

---

5. Now TEX. FAM.CODE ANN. §§ 51.12(a) & 52.025(a) (2002).

6. The court of appeals cites to § 52.04. We are unable to find in that section a requirement that a juvenile court officer make a decision on detention. Section 52.02(a), however, speaks to "a person taking a child into custody" making a decision to release the child, § 52.02(a)(1), or to detain the child at one of three facilities, § 52.02(a)(2)-(a)(4). Neither the current § 51.09 nor the portions of the old § 51.09 which are now found in

TEX. FAM.CODE ANN. § 51.095 (2002) appear to address the issue raised.

7. The grounds raised and the discussion indicate that the sections of § 51.09 under discussion are now found in § 51.095, "Admissibility of a Statement of a Child."

8. Now found in TEX. FAM.CODE ANN. § 51.12(a) (2002). The current language is "cell or holding facility."

■ Issue 5: § 51.09;[9] appellant's written statement does not contain a certificate by a magistrate that appellant knowingly, intelligently and voluntarily waived her rights before making the statement.

Issue 6: § 51.09;[10] appellant was never advised of her rights by a magistrate before being interrogated.

Issue 7: § 51.09;[11] appellant was never presented before a magistrate at any time before giving her statement.

Issue 9: § 52.025;[12] appellant was detained for more than six hours before the conclusion of her statement.

Issue 10: § 51.09;[13] appellant's statement was not signed in the presence of a magistrate with no law enforcement officer present.

Issue 11: § 51.09;[14] appellant's statement was signed in the presence of at least one law enforcement official who was armed.

Issue 13: § 52.025;[15] appellant was improperly left unattended in the interview room.

Appellant arrived at the police station at about 10:45 a.m. Her written statement was signed at about 9:40 p.m. As permitted by Illinois law, the youth officer who presided at the signing was an armed police officer. Appellant was left alone in the interrogation room for several periods before she was taken to the juvenile holding facility. From the record at hand, it appears that appellant was not taken before a magistrate. All of these circumstances violate provisions of Title 3.

■ However, a violation of the Family Code in this particular case does not necessarily dispose of the issue of admissibility. The holdings in our previous decisions in this area dealt with violations of § 51.095 by Texas law enforcement officers. When a law enforcement officer violates the laws of his or her own state, even while acting in good faith, exclusion of the evidence is appropriate because this remedy serves to deter future violations. *State v. Mayorga*, 901 S.W.2d 943, 946 (Tex.Crim.App.1995). Here, automatically excluding appellant's statement will not have a similar deterrent effect on the arresting officers; Illinois police will continue to comply with their own laws and procedures. Rather, the analysis should examine the effect of the absence of a magistrate on the admissibility on the challenged statement in a context of fairness to the parties, both the state and appellant, with the focus being on the purpose expressed in § 51.01: "to provide a simple judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced." TEX. FAM.CODE ANN. § 51.01 (2002). We, therefore, reverse and remand to the court of appeals for such an analysis.

COCHRAN, J., filed a concurring opinion in which WOMACK and HOLCOMB, JJ., joined.

9. Now TEX. FAM.CODE ANN. § 51.095(a)(1)(B)(ii).

10. Now TEX. FAM.CODE ANN. § 51.09(a)(1)(A).

11. Now TEX. FAM.CODE ANN. § 51.09(a)(1)(A).

12. Now TEX. FAM.CODE ANN. § 52.025(d).

13. Now TEX. FAM.CODE ANN. § 51.095(a)(1)(B)(ii).

14. Now TEX. FAM.CODE ANN. § 51.095(a)(1)(B)(ii).

15. Now TEX. FAM.CODE ANN. § 52.025(c).

KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, JJ., joined.

COCHRAN, J., filed a concurring opinion in which WOMACK and HOLCOMB, J.J., joined.

In 2001, the Texas Legislature amended Article 38.22 of the Texas Code of Criminal Procedure. That amendment provided that Texas courts may admit an accused's custodial statement that was obtained in another state in compliance with that state's laws, even though the taking of the statement did not comply with all of the requirements of Article 38.22. Presumably, that legislative change was a reaction to this Court's opinion in *Davidson v. State*, 25 S.W.3d 183 (Tex.Crim.App.2000). The amendment reflects the common sense notion that we cannot (and should not) expect police officers in other jurisdictions to know and apply Texas confession law when they take a suspect's statement in their own jurisdiction. Those officers should, instead, comply with the applicable laws of their own jurisdiction.[1] If they do so, article 38.23, section 8 explicitly permits Texas courts to admit the resulting statements.

Although the Legislature amended the Code of Criminal Procedure to effect this change, it did not amend the corresponding Family Code provision concerning the admissibility of a juvenile's statements.[2] We can speculate about its reasons, but the fact remains that the Legislature did not amend Family Code section 51.09 to provide for the admissibility of a juvenile's custodial statements taken in compliance with another jurisdiction's law concerning a juvenile's statements. Until and unless the Legislature acts, we should follow the applicable Family Code provisions and our previous choice-of-law decisions.

Therefore, I join the Court's opinion.

KELLER, P.J., filed a dissenting opinion in which KEASLER and HERVEY, J.J., joined.

Although appellant committed a crime in Texas, she was apprehended in Chicago, Illinois. She was a juvenile at the time. The authorities in Illinois took a statement from her that did not comply with Texas

---

1. *See, e.g.,* Robert O. Dawson, Texas Juvenile Law 43 (5th ed. 2001 Supp.) ("it seems a much more sensible rule to judge the admissibility of a statement in accordance with the circumstances in existence at the time and place of questioning than later retroactively in accordance with the law of the forum state").

2. The same rationale that led the Legislature to amend Article 38.22 might well apply to the taking of a juvenile's statements. Perhaps the Legislature simply overlooked the juvenile's confession statute. Or perhaps the Legislature intended that its Section 8 amendment to article 38.22 also apply to statements given by juveniles in foreign jurisdictions who are later certified to stand trial as adults, because Section 8 of article 38.22 begins with the statement:

   Notwithstanding any other provision of *this* article, a written, oral, or sign language statement of an accused made as a result of a custodial interrogation is admissible against the accused *in a criminal proceeding in this state* if . . .

   Tex.Code Crim. Proc. art. 38.22 § 8 (Vernon Supp.2001) (emphasis added). *See* Dawson, *supra* at 44 (suggesting that section 8 of article 38.22 "effectively abrogates [court of appeals' decision in] *Vega*, but leaves unchanged the possibility that a court may follow *Vega* in a juvenile case in which the child was not certified to criminal court for prosecution as an adult").

   In any event, this provision applies only to the admission of statements made on or after September 1, 2001. Appellant gave her statement to Illinois police on December 28, 1994. Thus even if the Legislature intended for this provision to apply to statements made by a juvenile who is later certified to stand trial as an adult, it would not apply to appellant's statement, which she made more than five years before the amendment's effective date.

Family Code § 51.09, which then required adherence to certain procedures in taking a statement from a juvenile before such a statement would be admissible in a criminal proceeding. The trial court admitted the statement over objection and appellant was convicted. Relying upon *Davidson v. State*,[1] the Court of Appeals held that the trial court abused its discretion in admitting the statement because Texas law, not Illinois law, controls the admissibility in Texas courts of a statement taken in Illinois, and the statement was taken in violation of Texas law.[2] In its petition for discretionary review, the State contends that Illinois law, rather than Texas law, should control.[3]

The Court holds that Texas law controls, and finds that certain provisions of the Texas juvenile code were not followed, but then remands to the Court of Appeals to determine whether fairness requires that the statements be excluded as a result of these violations of Texas law. I believe a more direct approach is required: we should acknowledge now that *Davidson* was wrongly decided and that Illinois law should apply to the statement taken in this case.

## A. The Choice of Law Issue

*Davidson* conducted a choice of law analysis that revolved around the nature of the rule at issue. The Court held that the electronic recording requirement of Article 38.22 is an evidentiary rule rather than an exclusionary rule, and as a result, followed the general conflict of laws principle that the law of the forum controls the admissibility of evidence.[4] Characterizing this portion of Article 38.22 as an evidentiary rule was essential to distinguishing the case from *Alvarado*, which held that the *Miranda* exclusionary rule would not be applied to statements taken in foreign countries.[5]

The Court now conducts a new choice of law analysis and finds that Texas has the most significant relationship to appellant's written statement because it came from a Texas resident about an offense committed in Texas. After finding on this basis that Texas has the most significant relationship to the statement, the Court concludes that it need not determine whether the rule at issue is evidentiary or exclusionary. But that conclusion ignores the fact that the nature of the rule is part of the analysis for determining the most significant relationship. The forum's interests are stronger when the rule is evidentiary than when the rule is exclusionary. There is no other way to explain the holding in *Alvarado*, where Mexico law was held to apply to a statement taken by local authorities in Mexico from a United States citizen about a crime committed in the United States.[6] Because *Miranda* is an exclusionary rule, the United States' interest in deterring wrongful conduct—the purpose of an exclusionary rule—was attenuated for statements taken in a foreign country, where the *Miranda* rule could not produce the

---

1.  25 S.W.3d 183 (Tex.Crim.App.2000).

2.  *Vega v. State*, 32 S.W.3d 897, 901–905 (Tex. App.-Corpus Christi 2000).

3.  Appellant contends in his brief that the Illinois authorities also failed to comply with *Illinois* law. Because the Court of Appeals held that Texas law controlled, and made no findings with regard to whether Illinois law had been violated, that issue is not before us.

4.  25 S.W.3d at 185–186, 186 n. 4; *see also* RESTATEMENT (SECOND) CONFLICT OF LAWS § 138.

5.  *See Alvarado v. State*, 853 S.W.2d 17, 21 (Tex.Crim.App.1993).

6.  See *Id.* at 19.

desired deterrent effect.[7] Under *Alvarado*, then, a statement is generally considered to have the most significant relationship to the jurisdiction in which it is taken for the purpose of determining the applicability of an exclusionary rule.

*Alvarado* did recognize two exceptions, where United States' law would apply to statements taken in foreign countries: (1) when the methods of taking the statement "shock the conscience" and (2) when U.S. authorities participate in obtaining the statement or the foreign authorities act as agents of their U.S. counterparts.[8] But, these exceptions actually prove the rule. Conduct that "shocks the conscience" would be the type of conduct that would produce unreliable (i.e. involuntary) statements and would be akin to an evidentiary rule (see discussion below). And when U.S. agents participate in or control the transaction, the United States' connection to the transaction is much greater than would otherwise be the case. These exceptions illustrate that "the most significant relationship" is not established simply by the fact that the statement was given by a U.S. citizen about a U.S. crime.[9] So a discussion of the character of the rule—evidentiary vs. exclusionary—is crucial to resolving the choice of law inquiry. The Court's attempt to circumvent this discussion is contrary to *Alvarado* and amounts to overruling it *sub silentio*.

### B. *Davidson*'s Applicability

Having determined that the character of the rule at issue is crucial to determining which law applies, I must next address whether *Davidson*'s holding that a certain rule is evidentiary in character leads to the conclusion that a different, but similar rule must also be treated as evidentiary.

At the time of appellant's statement, § 51.09 provided:

(a) Unless a contrary intent clearly appears elsewhere in this title, any right granted to a child by this title or by the constitution or laws of this state or the United States may be waived in proceedings under this title if:

(1) the waiver is made by the child *and the attorney for the child;*

(2) the child and the attorney waiving the right are informed of and understand the right and the possible consequences of waiving it;

(3) the waiver is voluntary; and

(4) the waiver is made in writing or in court proceedings that are recorded.

(b) *Notwithstanding any of the provisions of Subsection (a) of this section,* the statement of a child is admissible in evidence in any future proceeding concerning the matter about which the statement was given if:

(1) when the child is in a detention facility or other place of confinement or in the custody of an officer, the statement is made in writing and the statement shows that the child has at some time prior to the making thereof received from a magistrate a warning that:

(A) *the child may remain silent and not make any statement at all and that any statement that the child makes may be used in evidence against the child;*

(B) *the child has the right to have an attorney present to advise the*

---

**7.** *Id.* at 21.

**8.** *Id.* at 21–22.

**9.** As in *Alvarado,* there is no indication in this case that Texas authorities participated in taking the statement in Illinois or that Illinois authorities acted as agents of their Texas counterparts.

*child either prior to any questioning or during any questioning;*

(C) *if the child is unable to employ an attorney, the child has the right to have an attorney appointed to counsel with the child prior to or during any interviews with peace officers or attorneys representing the state;*

(D) *the child has the right to terminate the interview at any time;*

. . . [10]

*The child must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement* and sign the statement in the presence of a magistrate who must certify that he has examined the child independent of any law enforcement officer or prosecuting attorney, except as required to ensure the personal safety of the magistrate or other court personnel, and has determined that the child understands the nature and contents of the statement and has knowingly, intelligently, and voluntarily waived these rights.

(2) *it be made orally and the child makes a statement of facts or circumstances that are found to be true, which conduct tends to establish his guilt, such as the finding of secreted or stolen property, or the instrument* with which he states the offense was committed.

(3) the statement was res gestae of the delinquent conduct or the conduct indicating a need for supervision or of the arrest.

. . . [11]

(d) This section does not preclude the admission of a statement made by the child if:

. . .

(2) *the statement does not stem from custodial interrogation;* or

(3) *without regard to whether the statement stems from custodial interrogation, the statement is voluntary and has a bearing on the credibility of the child as a witness.*[12]

An examination of § 51.09's text makes clear that subsections (b) through (d) can be accurately characterized as the juvenile counterpart to Article 38.22. The *Miranda*-type warnings found in Article 38.22, § 2(a)(1)-(5) are also found in § 51.09(b)(1)(A)-(D). The waiver of rights language found in Article 38.22, § 2(b) also appears in the last paragraph § 51.09(b)(1). The corroboration exception set out in Article 38.22, § 3(c)(regarding statements in which the facts are found to be true) is also set out in § 51.09(b)(2). Finally, exceptions for noncustodial statements and statements used for impeachment are found in both statutes.[13]

**10.** Subsections (E) and (F) involve additional warnings that the juvenile court may waive jurisdiction so that the child is tried as an adult and that for certain crimes the child can spend up to 30 years in prison even if he is not tried as an adult. Subsection (G) imposes a requirement that a statement be signed in front of a magistrate and procedures associated with signing the statement before the magistrate.

**11.** Two subsections labeled "(c)" follow-the first addresses the consequences of a failure to warn under subsection (b)(1)(E) and (F) while the second involves a warning that, for certain crimes, the child can spend up to 40 years in prison even if he is not tried as an adult.

**12.** *See* Tex. Fam.Code § 51.09 (1993)(emphasis added). The relevant portion of the statute has since been moved to § 51.095. All future references in this opinion to § 51.09 are to the version of the statute applicable to appellant's case unless otherwise indicated.

**13.** Compare Article 38.22, § 5 and § 51.09(d)(2)-(3).

Moreover, the Article 38.22 roots of the juvenile statute can be traced through the statute's historical progression in response to prior caselaw. Before 1975, § 51.09 contained only the text found in subsection (a). This text required any waiver of the child's rights to be made by both the child *and his attorney.* In our 1975 decision in *Lovell v. State,* a statement was taken from a juvenile in compliance with Article 38.22's requirements but did not comply with then § 51.09 because only the child, and not his attorney, waived the child's rights.[14] We held that § 51.09 controlled over Article 38.22, and thus, the child's statement was inadmissible.[15] This holding was in conformity with lower court holdings the year before that construed the juvenile statute in civil cases.[16] Also in 1975, the Legislature added subsection (b) to § 51.09.[17] The clause at the beginning of subsection (b)—"Notwithstanding any of the provisions of Subsection (a) of this section"—evinces the legislative intent to add to the juvenile code a counterpart to Article 38.22. In later cases, we observed that the amendment was designed to remove the privilege against self-incrimination from the rights a juvenile needed an attorney to waive.[18] Because § 51.09(b)-(d) was the juvenile counterpart to Article 38.22, *Davidson*'s analysis applies equally to the juvenile statute.

The Court's opinion contends, however, that the statutes are distinguishable because "the persons involved and the objectives of the two provisions are different." It is true that Article 38.22 covers adults while § 51.09 applies to juveniles, but I do not see how that is a relevant distinction, and the Court does not explain why that difference should matter.

In support of the contention that the "objectives of the two provisions are different," the Court quotes from Texas Family Code § 51.01, outlining the purpose and interpretation of Title 3 of the Family Code, of which § 51.09 is a small part. The opinion quotes the second and fifth purposes of Title 3, which are:

(2) to protect the welfare of the community and to control the commission of unlawful acts by children,

* * *

(5) to provide a simple judicial procedure through which the provisions of this title are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights recognized and enforced.[19]

However, the Court fails to explain how these purposes are at variance with those articulated in the Code of Criminal Procedure, which has its own purpose provision,

14. 525 S.W.2d 511, 513–515 (Tex.Crim.App. 1975).

15. *Id.*

16. *See Comer v. State,* 776 S.W.2d 191, 195 (Tex.Crim.App.1989)(citing *In re R.E.J.,* 511 S.W.2d 347 (Tex.Civ.App.-Houston [1st Dist.] 1974, no writ); *In re F.G.,* 511 S.W.2d 370 (Tex.Civ.App.-Amarillo 1974, no writ); *In re V.R.S.,* 512 S.W.2d 350 (Tex.Civ.App.-Amarillo 1974, no writ); *Lovell* ).

17. Acts 1975, 64th Leg., ch. 693, § 9. The added subsection was substantially the same as the subsection (b) applicable to appellant,

except that it did not contain subsection (b)(1)(F)(warning about possible 30 year confinement in TDCJ) and some changes later made in subsection (b)(1)(G)(labeled F at the time). Subsections (c) and (d) were added at a later time.

18. *Comer,* 776 S.W.2d at 195; *Griffin v. State,* 765 S.W.2d 422, 426 n. 8 (Tex.Crim.App. 1989).

19. Texas Family Code § 51.01(2) & (5).

Article 1.03. That provision includes some similar purposes, such as:

1. To adopt measures for preventing the commission of crime;

* * *

4. To bring to the investigation of each offense on the trial all the evidence tending to produce conviction or acquittal;

* * *

5. To ensure a fair and impartial trial.[20]

Both the Code of Criminal Procedure and the Family Code are concerned with protecting society and providing fair procedures to those accused. And even if a variance of purposes were somehow shown, the next question would be how and why the difference in purposes affect the choice of law analysis. The Court provides no answer to that question, and I perceive no relevant distinction.

The Court also contends that the present case is different from *Davidson* because the statutory subsection at issue in *Davidson* called for its requirements to be "strictly construed" while the Family Code provision does not. However, whether a statute's requirements are subject to strict construction is not relevant to the choice-of-law inquiry. In *Nonn v. State*, we addressed a subsection of Article 38.22 that did not require strict construction.[21] We nevertheless held that *Texas* law controlled the admissibility of the evidence, as it did in *Davidson*—although we also pointed out that the Texas law required

only substantial compliance with the particular subsection at issue.[22] So, *Davidson* may be distinguishable from the present case on what analysis proceeds under Texas law—strict versus substantial compliance—but the case is not distinguishable on which law applies in the first place.[23]

## C. Why *Davidson* should be overruled

Under the doctrine of *stare decisis*, it is often "better to be consistent then right." [24] This doctrine "promotes judicial efficiency and consistency, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." [25] However, overruling precedent is acceptable under certain circumstances.[26] Some factors that support overruling precedent are: (1) when the original rule is flawed from the outset, (2) when the reasons underlying the precedent have been undercut with the passage of time, and (3) when the rule consistently creates unjust results or places unnecessary burdens upon the system.[27] All three of these factors militate in favor of overturning the choice-of-law rule set forth in *Davidson*.

### 1. *Flawed from the outset*

*Davidson* relied upon the general choice-of-law rule for evidence found in the Restatement, but there is a section of the Restatement that we overlooked. Restatement § 139 addresses privileges, and provides that evidence is not privileged if the

---

20. Article 1.03, subdivisions 1, 4, & 5.

21. 41 S.W.3d 677, 678 (Tex.Crim.App.2001).

22. *Id.*

23. Perhaps the Court is conceding as much— since it ultimately holds that Texas law applies. If so, the Court ought to separate the discussion into two parts: (1) which law applies, (2) if Texas law is found to apply, how the case is resolved under Texas law.

24. *Malik v. State*, 953 S.W.2d 234, 236 (Tex. Crim.App.1997).

25. *Jordan v. State*, 54 S.W.3d 783, 786 (Tex. Crim.App.2001); *Hammock v. State*, 46 S.W.3d 889, 892 (Tex.Crim.App.2001).

26. *Jordan*, 54 S.W.3d at 786.

27. *Id.*

evidence would be admissible under *either* the forum state's law *or* the law of the state with the most significant relationship to the communication.[28] In support of the Restatement's rule of treating privileged evidence differently from other types of evidence, we have explained that "Unlike other rules of evidence, privileges are not designed primarily to exclude unreliable evidence. In fact, privileges expressly subordinate the goal of truth-seeking to other societal interests."[29] For this reason, privileges are more akin to rules pertaining to substantive rights.[30]

The Supreme Court has referred to the Fifth Amendment right against self-incrimination as the "privilege" against self-incrimination[31] and that reference is probably not accidental: the Fifth Amendment "privilege" protects societal interests apart from the truth-seeking function. To protect that "privilege," the Supreme Court outlined certain procedural safeguards in *Miranda*.[32] In *Alvarado*, we recognized that *Miranda* does not apply to statements taken in foreign countries.[33] However, *Alvarado* contained *dicta* characterizing Article 38.22 as an evidentiary rule rather than an exclusionary rule,[34] a point we observed in *Davidson*.[35] But, that *dicta* in *Alvarado*—and the similar conclusion made in *Davidson*—is not entirely accurate.

The 1895 Code of Criminal Procedure's predecessor to Article 38.22, Article 790, provided three categories of circumstances under which oral or written custodial confessions were admissible: (1) a voluntary statement made by the accused to an examining court, in accordance with the law, (2) a voluntary statement made by the accused after being cautioned that the statement may be used against him, and (3) a confession in which the accused makes a "statement of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or instrument with which he states the offense was committed."[36] While a requirement that the statement be "voluntary" could be seen as addressing the reliability of the statement, the Code already contained another statute—Article 789—that required confessions to be "freely made without compulsion or persuasion."[37] The remaining element found in category two, a warning that the confession could be used against the accused, is a privilege—like element designed to protect the accused's right against self-incrimination. On the other hand, the third category-regarding statements in which there were facts found to be true—appears to address reliability concerns, as would befit an ordinary evidence rule, while the first category, involving a statement made in an examining court, may address both reliability and self-incrimination concerns. It may be that Article 790 was designed to serve dual purposes in the custodial confession

---

**28.** *See also Gonzalez v. State*, 45 S.W.3d 101, 104 (Tex.Crim.App.2001).

**29.** *Id.* at 105 (quoting *Ludwig v. State*, 931 S.W.2d 239, 242 (Tex.Crim.App.1996)).

**30.** *Id.* at 106.

**31.** *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**32.** *Id.*

**33.** *Alvarado*, 853 S.W.2d 17, 20–21 (Tex.Crim. App.1993).

**34.** 853 S.W.2d at 19 n. 3.

**35.** 25 S.W.3d at 186 n. 4.

**36.** Texas Code of Criminal Procedure, Article 790 (1895); *see also Henzen v. State*, 62 Tex. Crim. 336, 137 S.W. 1141, 1142 (1911).

**37.** Article 789 (1895); *Henzen*, 137 S.W. at 1142.

setting by preserving the accused's rights and ensuring the reliability of confessions. Or perhaps the Legislature was simply less concerned with the accused's rights when the circumstances were especially probative of the confession's reliability.

A dual purpose in Article 790's proscriptions became more evident in the 1907 amendment, which added to category two an additional warning ("that he does not have to make any statement at all"), a requirement that the confession be written and signed, and a requirement that the warnings be shown on the written statement.[38] In *Henzen*, we addressed the purpose of this amendment. We observed that "claimed verbal confessions were the subject of much controversy. Usually the person who claimed that the confession was made, was either a peace officer, the district or county attorney, or the magistrate of the lower court—justice of the peace. The defendant would deny and swear that no confession was made, or, if so, no warning given."[39] As a result, we were "frequently called to comment on such matters and to hold that confessions were to be received with great caution."[40] We concluded that the "Legislature, to prevent such uncertainty and controversies, deemed it wise" to impose these additional requirements.[41] Here we have the dual purpose: the Legislature apparently wished to eliminate uncertainty and controversies about two things: (1) whether the statement was made and (2) whether the warnings were given. Whether the statement was made is a reliability con-

cern, but whether the warnings were given is a privilege-type concern because the warnings concerned the accused's right against self-incrimination.

In 1965, the Code was renumbered and Article 790 became Article 38.22. Article 38.22 retained the three categories of permissible custodial statements but expanded further the restrictions under category two. While carrying over the requirement that the confession be in writing and reflect the two required warnings (the accused has a right not to make a statement and the statement may be used against him),[42] the Legislature added to category two the requirement that the accused receive "at some time prior to making" the confession, "the warning provided in Article 15.17" and the requirement that the confession show "the time, date, place and name of the magistrate who administered the warning."[43] Article 15.17 required that an accused be informed of the accusation against him, of his right to counsel (retained if he could afford one and appointed if he could not), and of his right to an examining trial.[44]

In 1966, the United States Supreme Court handed down *Miranda*. In that case, the Supreme Court articulated four warnings that must be given to the accused before custodial interrogation is initiated, at least absent equally effective procedures:

1. he has the right to remain silent,[45]
2. anything said can and will be used against him in court,[46]

---

**38.** *See Henzen*, 137 S.W. at 1143.

**39.** *Id.* at 1142.

**40.** *Id.*

**41.** *Id.* at 1143.

**42.** Article 38.22(a)(2)(1965).

**43.** *Id.*

**44.** Article 15.17 (1965). This provision also duplicated the two warnings found in Article 38.22(a)(2).

**45.** 384 U.S. at 468, 86 S.Ct. 1602.

**46.** *Id.* at 469, 86 S.Ct. 1602.

3. he has the right to consult with a lawyer and to have the lawyer with him during interrogation,[47] and

4. if he is indigent, a lawyer will be appointed to represent him.[48]

The Court further held: "The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently."[49] Article 38.22's second category had already incorporated the first two requirements. The second two requirements were partly incorporated: the provision required the accused to be informed that he had a right to counsel (appointed if he was indigent), but the provision did not specifically inform the accused of his right to the presence of counsel *prior to or during the interrogation.*

In 1967, the Legislature revised the second category of statements covered by Article 38.22 to fully and more explicitly incorporate *Miranda*'s requirements. These requirements were incorporated in the following three warnings:

1. he has the right to have a lawyer present to advise him either prior to any questioning or during any questioning,

2. if he is unable to employ a lawyer, he has the right to have a lawyer appointed to counsel with him prior to or during any questioning, and

3. he has the right to remain silent and not make any statement at all and that any statement he makes may be used in evidence against him at his trial.[50]

The Legislature also included a waiver provision consistent with the language of *Miranda:* "The defendant must knowingly, intelligently, and voluntarily waive these rights prior to and during the making of the statement."[51]

In 1977, the Legislature significantly rewrote Article 38.22. The warnings were split into five subsections and the wording was revised somewhat to what now exists in the present version of the statute:

(1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2) any statement he makes may be used as evidence against him in court;

(3) he has the right to have a lawyer present to advise him prior to and during any questioning;

(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

(5) he has the right to terminate the interview at any time.[52]

This list is very similar to the one inserted in Family Code § 51.09 two years earlier.[53] The Legislature also deleted from Article 38.22 the first category of statements (those before an examining court),[54] and the Legislature added a section permitting the use of oral statements for impeachment if they were electronically recorded.[55] The list of five warnings were required for

---

**47.** Id. at 471, 86 S.Ct. 1602.

**48.** Id. at 473, 86 S.Ct. 1602.

**49.** *Id.* at 444, 86 S.Ct. 1602.

**50.** Article 38.22, subdivision 1(c)(1967).

**51.** *Id.*

**52.** Acts 1977, 65th Leg., ch. 348, § 2; Article 38.22, § 2(a)(1)-(5) (1977).

**53.** It is essentially the same list, except for omitting a redundant warning, and some minor differences in wording. *See* Acts 1975, 64th Leg., ch. 693, § 9; § 51.09(b)(1)(A)-(D) (1975).

**54.** *See* Article 38.22, *passim* (1977).

**55.** *See* Article 38.22, § 3 (1977).

both written and oral statements,[56] but the category three "found to be true" type statements were retained only as an exception to the requirements for oral statements.[57] In 1981, the Legislature deleted the impeachment-only limitation upon oral statements, so that they became admissible as substantive evidence if the requirements outlined in the statute were met.[58]

As the above discussion shows, Article 38.22 and § 51.09 serve dual purposes: to some degree they are *Miranda*-type provisions: they articulate procedural safeguards designed to protect the Fifth Amendment right against self-incrimination, but they are also designed to ensure some degree of reliability of the statements taken. The statutes in question share characteristics with both ordinary rules of evidence and privileges because the statutes serve to protect interests in conformity with *and* apart from truth-seeking.

I do not believe that it is possible or desirable to parse various aspects of the confession statutes into different categories, so that some are covered by choice-of-law rules relating to ordinary evidence while others are covered by choice-of-law rules relating to privileges. To attempt to carve up Article 38.22 or § 51.09 in that fashion would lead to confusion and would seem contrary to the legislative intent in placing all of these provisions within the same Article or section. Each confession statute should in its entirety be subject to one choice-of-law rule.

Although both statutes protect reliability concerns to some degree, they are also designed in large measure to protect the right against self-incrimination, and it is clear that *Miranda* was in fact a signifi-

cant influence in the development of these provisions. Moreover, even to the extent these statutes safeguard reliability interests, their method of protecting these interests is prophylactic: there is nothing inherently unreliable about statements that fail to satisfy the statutes' requirements; rather, the rules are in place as safeguards that eliminate the need to engage in a rigorous case-by-case determination of reliability. In that sense the statutes are more like *Miranda* than, for example, the rules of evidence relating to hearsay or expert testimony.

These provisions also differ from ordinary evidence rules in that they guide the behavior of law enforcement officials. Law enforcement agents know that they must follow certain requirements in obtaining a statement in order for the statement to be admissible in their jurisdiction. They cannot be expected, however, to know the law of other jurisdictions. The legitimate expectations of law enforcement agents adds more support for treating these types of dual-purpose provisions as privileges under the Restatement rather than as ordinary rules of evidence.

That out-of-state agents cannot be expected to know Texas law also means they will not be deterred from taking statements in violation of Article 38.22. The Court recognizes this fact but misses the implication-the absence of a deterrent effect is a reason for not applying Texas law to the Illinois authorities, just as the absence of a deterrent effect was a reason for not applying *Miranda* to Mexican authorities in *Alvarado*.

## 2. *Undercut with the passage of time*

Two subsequent developments have undercut the reasons for the rule in *David-*

---

**56.** *See* Article 38.22, §§ 2 & 3 (1977).

**57.** See Article 38.22, *passim* & § 3(c) (1977).

**58.** Acts 1981, 67th Leg., ch. 271, § 1; Article 38.22, § 3 (1981).

*son.* First, our later decision in *Gonzalez* lends support to the notion that a *Miranda*-type statute should be interpreted more like a privilege than like an ordinary rule of evidence. It was in *Gonzalez* that we explained that privileges are not designed primarily for the purpose of truth-seeking but for other purposes,[59] and, as we have already observed, *Miranda*-type provisions are similar to privileges in that respect.

Second, the Legislature amended Article 38.22 to overturn *Davidson*'s holding:

> Notwithstanding any other provision of this article, a written, oral, or sign language statement of an accused made as a result of a custodial interrogation is admissible against the accused in a criminal proceeding in this state if:
>
> (1) the statement was obtained in another state and was obtained in compliance with the laws of that state or this state; or
>
> (2) the statement was obtained by a federal law enforcement officer in this state or another state and was obtained in compliance with the laws of the United States.[60]

The legislative amendment establishes the same choice-of-law rule found in Restatement § 139. That the amendment was specifically designed to overturn *Davidson* is evident not only from the statutory language, but also from the legislative history. Although not mentioning it by name, the House Bill Analysis discusses *Davidson* as the reason for the statutory amendment:

> BACKGROUND AND PURPOSE
>
> In 1995, a man and his wife joined a traveling carnival while an investigation in Texas was pending into allegations

that the man had sexually abused his two daughters. As the carnival prepared to reenter the United States from Canada, a special agent of the United States Customs Service ran a routine check on the suspect and found a Texas arrest warrant for the suspect. When the suspect crossed the border into Montana, the agent detained the suspect and read him his Miranda rights. Three weeks later, the agent compiled a report in which he recorded his recollections of the suspect's statements. No other record of the suspect's statement exists. Prior to the 77th Legislature, state law provided that one of the requirements for admissibility of a statement of an accused made as a result of custodial interrogation (statement) was that the statement was electronically recorded. State law also required strict compliance with all requirements for the admissibility of a statement. Although the statement was admissible under Montana law and the Texas trial court ruled the statement admissible, the Court of Criminal Appeals of Texas ruled that the statement was inadmissable because it did not comply with Texas law and remanded the case. House Bill 553 provides that a statement is admissible in a criminal proceeding in Texas if the statement was obtained in another state and was obtained in compliance with the laws of that state or this state or the statement was obtained by a federal law enforcement officer in Texas or another state and was obtained in compliance with the laws of the United States.[61]

We have often said that, "When the Legislature meets, after a particular statute has been judicially construed, without

---

59. *See* this opinion, *ante.*

60. Article 38.22, § 8; H.B. 553, Acts 2001, 77th Leg., ch. 990, § 1, eff. Sept. 1, 2001.

61. Office of House Bill Analysis, H.B. 553, 7/19/2001.

changing that statute, we presume the Legislature intended the same construction should continue to be applied to that statute."[62] The opposite is sometimes also true: when the Legislature immediately repudiates a judicial interpretation of a statute, we may infer that our judicial construction was at odds with the true legislative intent. The Legislature's reaction to *Davidson*'s holding suggests just such an inference in this case. I am mindful that "one session of the legislature does not have the power to declare the intent of a past session, and a legislative construction of an act of another legislature is uniformly held to be entitled to little weight."[63] However, when other reasons exist for questioning the validity of a judicial interpretation of a prior legislative enactment, the Legislature's timely subsequent action undercuts the interests underlying the doctrine of *stare decisis*. With our holding in *Davidson* having been so quickly abrogated by the Legislature, we should not be so reluctant to reexamine the precedent in question.

Although the Legislature did not amend chapter 51 of the Family Code, containing the juvenile counterpart to Article 38.22, the Legislature's lack of action in that regard should be attributed to the fact that we had not yet misinterpreted chapter 51. I see no reason to continue to rely upon a case that it appears was incorrectly decided in the first place.

### 3. *Unjust results/unnecessary burdens*

Maintaining the *Davidson* rule also creates unjust results and unnecessary burdens upon the system. Foreign officials cannot be expected to know procedural requirements peculiar to our state. Suppressing evidence based upon their failure to follow those requirements simply results in the exclusion of reliable evidence that was obtained through proper methods. Attempts to comply with Texas law would be burdensome, as foreign officials will be unfamiliar with our law and may have difficulty locating the pertinent provision. The present case illustrates that potential difficulty. Even if a foreign official has the foresight to look in the Code of Criminal Procedure and find Article 38.22, it is unlikely that he would realize that he must look in the Family Code to find the juvenile counterpart to that statute. In a Senate committee hearing, Tarrant County Assistant District Attorney J.D. Granger discussed the difficulties of ensuring foreign officials' compliance with Texas law:

> We actually had a case in Tarrant County where, um, a guy actually killed somebody—who was later then caught in the State of Washington, and they attempted to go ahead and follow all our laws in Texas; in fact we even faxed them the proper form to comply, but part of the fax on the top of the page was missing. Because of that, we lost the confession in that case. I know part of the testimony in the House was: "Well, if a case is really important to you why don't you send an officer to wherever that state—wherever that person is and go ahead and take it." That's incredibly expensive. Only in our high profile capital murder cases, um, do we generally spend that kind of taxpayer dollars.[64]

---

**62.** *State v. Hardy,* 963 S.W.2d 516, 523 (Tex.Crim.App.1997)(quoting *Marin v. State,* 891 S.W.2d 267, 271–272 (Tex.Crim.App. 1994)); *see also Pettigrew v. State,* 48 S.W.3d 769, 773 (Tex.Crim.App.2001).

**63.** *Ex Parte Schroeter,* 958 S.W.2d 811, 813 (Tex.Crim.App.1997).

**64.** Senate Criminal Justice Committee, 5/11/2001, Part I, 1:06:42–1:07:18.

Again, the Court recognizes the problem but fails to recognize that its solution lies not in developing a nebulous "fairness" test for admitting or excluding evidence under Texas law but in applying the law with which the relevant law enforcement authorities were familiar.

### D. The Court's Standard

The Court fashions an amorphous standard based upon "fairness," taking into account the purposes listed in the Family Code. There are several problems with this approach. First, the resulting standard lacks any basis in the law. The purpose section of the Family Code is just that—a purpose section. In and of itself, the section imposes no requirements but is simply a tool for interpreting other sections. The purpose section may, for example, legitimately lead to the conclusion that § 51.09 should be interpreted liberally, rather than strictly, so that substantial compliance with its provisions is all that is required. The Court has clearly explained how some of the Illinois procedures substantially complied with some portions of the Texas juvenile statute. But the Court also points to some portions of § 51.09 that were not followed at all. A complete failure to implement a statutory requirement cannot be considered "substantial compliance." [65] On what basis can "fairness" be used to ignore a statutory requirement for which there was no compliance? The Court does not cite a basis and I fail to perceive one. Second, the fairness standard fails to give adequate guidance on how to rule on these questions. Trial courts will be in the position of having to decide on the basis of an indefinite "fairness" standard whether confessions are admissible. And courts of appeals must decide when fairness dictates that a particular Texas requirement be ignored—which encourages appellate courts to import their own subjective views on what is "fair." The Court of Appeals in this case will be understandably confused over how to analyze the case under the Court's opinion. [66] Finally, the standard appears to be a backdoor choice of law analysis: when the result of applying Texas law seems unfair (in juvenile cases but not in adult cases), Texas law will simply be ignored as being inconsistent with the purpose provisions of the Family Code. The bench and bar would be better served by the Court conducting the choice of law analysis expressly.

### E. Conclusion

*Davidson* should be overruled. We ought to hold that Restatement § 139, relating to privileges, governs the choice-of-law issue for *Miranda*-type statutes, including Article 38.22 and § 51.09. Under that standard, an accused's statement would be admissible if it satisfies *either* the law of the forum state (i.e. Texas) *or* the law of the jurisdiction with the most significant relationship to the statement (which, in this case, would be Illinois).

Instead, the Court acts inconsistently with *Alvarado* and opts for an amorphous "fairness" standard for determining admissibility under Texas law that lacks a basis in law and fails to give any guidance to the trial and appellate courts of this state. I respectfully dissent.

---

**65.** *Carranza v. State*, 980 S.W.2d 653, 655 (Tex.Crim.App.1998).

**66.** This lack of precision found in the fairness standard is actually contrary to the juvenile code's avowed purpose "to provide a simple judicial procedure through which the provisions of this title are executed and enforced."