NUMBER 13-98-044-CR 



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


MARIE LISETTE GARCIA VEGA, Appellant,


v.



THE STATE OF TEXAS, Appellee.

 


On appeal from the 92nd District Court 

of Hidalgo County, Texas

 


OPINION ON REMAND

 

Before Justices Yañez, Rodriguez, and Hinojosa (1) 


Opinion on Remand by Justice Rodriguez



 Appellant, Marie Lisette Garcia Vega, a juvenile, was tried as an adult in Hidalgo
County. A jury found her guilty of the offenses of capital murder, aggravated
kidnaping, and aggravated robbery. Because the State did not seek the death penalty
for the capital murder, the trial court assessed her punishment at life imprisonment for
capital murder. The jury assessed punishment at twenty years' imprisonment for
aggravated kidnaping and twenty years' imprisonment for aggravated robbery. On
remand, we affirm.

I. Background


 In late December 1994, Vega, who was sixteen at the time, and her boyfriend,
nineteen-year-old Jaime Nonn, were implicated in a capital murder in Starr County,
Texas. They had fled to Chicago, Illinois. On December 28, 1994, Vega and Nonn
were arrested by the Chicago police after Starr County deputies advised the Chicago
Police Department that Texas warrants had been issued for the two suspects. Both
Nonn (2) and Vega gave statements in Illinois. The trial court overruled Vega's motion
to suppress the written statement she made to the Illinois authorities.

 On direct appeal following the convictions, Vega raised eighteen issues, thirteen
of which complained of the trial court's admission of her written statement obtained
in Illinois by Illinois law enforcement officers. Vega also complained that the trial court
erred by admitting evidence of extraneous offenses and giving an inappropriate limiting
instruction regarding the extraneous offenses. Relying on Davidson v. State, 25
S.W.3d 183 (Tex. Crim. App. 2000) (en banc), a panel of this Court held that the trial
court abused its discretion when it admitted Vega's Illinois statement into evidence. 
See Vega v. State, 32 S.W.3d 897, 906 (Tex. App.-Corpus Christi 2000), reversed
and remanded, 84 S.W.3d 613 (Tex. Crim. App. 2002) (en banc). We reversed all
three judgments of the trial court and remanded for a new trial. Id.

 On the State's petition for discretionary review, the Texas Court of Criminal
Appeals held that this case is not a Davidson case by statute, circumstances, or
command to "strictly construe," and that Davidson is inapplicable here. (3) Vega v.
State, 84 S.W.3d 613, 616 (Tex. Crim. App. 2002) (en banc). The court also
concluded that "[b]ecause appellant was a juvenile at the time she gave her statement,
its admissibility must be determined under Title 3 of the Family Code." Id. And we
are not to "strictly" construe Title 3 because the legislature did not so mandate. Id. 
Additionally, although Vega and the State take the position that the issue on remand
is the review of the fairness factor in a conflict-of-laws analysis, we believe that the
court of criminal appeals has decided that issue. In its opinion, the court determined
that procedural issues in this case were governed by the law of Texas, the forum
state, and that substantive issues were also governed by Texas law because the
conflict-of-law schemes of both Illinois and Texas militate for such application. (4) See
id. at 617; see also id. at 621 (Keller, J., dissenting).

 The court of criminal appeals remanded this case for an analysis, but not for our
analysis of how fairness should be factored into a conflict-of-laws analysis. Rather,
we have been charged to analyze how the absence of a magistrate impacts the
fairness to the parties, with our focus being on the purpose expressed in section 51.01
of the family code: "to provide a simple judicial procedure through which the
provisions of this title are executed and enforced and in which the parties are assured
a fair hearing and their constitutional and other legal rights recognized and enforced." (5) 
Id. at 619; see Acts 1973, 63rd Leg., p. 1460, ch. 554, § 1, eff. Sept. 1, 1973
(current version at Tex. Fam. Code Ann. § 51.01(6) (Vernon 2002)).

 As stated in our original opinion,

 [t]his appears to be a case of first impression in the state of Texas. This
case presents the issue of whether a sister state's law enforcement
officers must adhere to Texas's scheme of processing juvenile offenders
for a statement taken by those officers to be admissible against the
juvenile in a Texas court.


Vega, 32 S.W.3d at 900. On remand, however, as directed by the court of criminal
appeals, we will not apply Davidson; we will apply Texas law--specifically, Title 3 of
the Texas Family Code--but we will not apply it strictly; and we will analyze fairness
to the parties focusing on the purpose of section 51.01.





II. Admissibility of Vega's Written Illinois Statement

 In her first thirteen issues, Vega argues that, because her written statement was
not procured in conformance with the Texas Family Code, it should have been
excluded. The trial court denied Vega's motion to suppress her statement.

A. Standard of Review


 When reviewing a trial court's ruling on a motion to suppress, we give almost
total deference to a trial court's determination of facts supported by the record and its
rulings on application of law to fact, or "mixed" questions of law, when those fact
findings involve an evaluation of the credibility and demeanor of witnesses. Maestras
v. State, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999); Guzman v. State, 955 S.W.2d
85, 89 (Tex. Crim. App. 1997) (en banc). However, we review de novo mixed
questions of law and fact that do not turn on an evaluation of credibility and
demeanor. Maestras, 987 S.W.2d at 62; Guzman, 955 S.W.2d at 89. In this case,
because there is no disagreement about the facts surrounding Vega's statement given
to the Chicago police or the credibility of the witnesses in this case, the trial court's
ruling on these matters did not involve an assessment of the credibility and demeanor
of the witnesses. See Ramirez v. State, 44 S.W.3d 107, 109 (Tex. App.-Austin
2001, no pet.). Therefore, we will conduct a de novo review of the denial of Vega's
motion to suppress.




B. Analysis


1. Issues Determined by the Court of Criminal Appeals


 Before remanding to this Court, the court of criminal appeals examined issues
one, two, three, four, eight, and twelve--Vega's complaints regarding the facility in
which she was detained, unauthorized officers making detention decisions, and
warnings allegedly not given. See Vega, 84 S.W. at 615-18. Generally, as to these
issues, the court determined that "[i]t is undisputed that, while correct under Illinois
law, the procedures followed in obtaining [Vega's] statement, as well as the format
of the statement itself, were not in compliance with Title 3 of the Texas Family Code."
 Id. at 615. However, "Illinois authorities, by following Illinois law, also complied with
Texas law to the extent necessary to carry out Texas's intended purpose and public
policy." Id. at 618. Finding compliance, the court of criminal appeals decided in the
State's favor on issues one, two, three, four, eight, and twelve.

 More specifically, by issues one, two, and eight, Vega complained of the Illinois
facility where she was detained, urging violations of sections 52.02, 52.025, and
51.12. (6) Vega contended that she was not taken without unnecessary delay to a place
designated in this code section, that the Chicago police failed to interview her in an
approved juvenile processing office, and that she was not detained in a facility
approved by Texas authorities. Addressing these issues, the court of criminal appeals
noted that Vega was taken to an equivalent Illinois facility and concluded that "[t]o
hold that such actions were not sufficient to satisfy Texas's concerns would make
impossible any apprehension of a Texas juvenile offender any place outside of Texas
and would not advance Texas public policy as expressed in § 51.01." See id. at 617-18.

 By her third issue, Vega urged that the Chicago police failed to have an
authorized officer of the Texas juvenile court decide whether Vega should be further
detained. See id. at 618. The court of criminal appeals found, however, that there
is no such requirement in the Texas Family Code. See id. It concluded the "Chicago
police arrested [Vega] under a Texas warrant that included a no-bond condition," and,
thus, "Illinois authorities had no discretion to release her." Id. (citing 705 Ill. Comp.
Stat. 405/5-8 (1994)).

 In issue four, Vega contended that her written statement did not contain all of
the warnings required by section 51.09. (7) However, the court of criminal appeals
found that Vega did receive the warnings, essentially the Miranda warnings, at least
three times. Id. Additionally, she "was informed of Illinois law, which while
technically incorrect, accurately conveyed the possibility of being treated as an adult
when accused of murder." Id.

 Finally, in issue twelve, Vega complained that she was detained in an area
where adults arrested for, or charged with, a crime are detained, in violation of section
51.12. (8) From the language of the statute, the court of criminal appeals determined
that "[a] reasonable inference is that the legislature intended to prohibit putting a
juvenile into circumstances in which the juvenile might be victimized by adult
offenders." Id. "Vega was held in an interrogation room. She was at all times kept
separate from adult offenders." Id.

 Having been resolved by the court of criminal appeals, these issues are not now
before this Court.

2. Issues Remanded by the Court of Criminal Appeals


 The court of criminal appeals has remanded the following issues for our review:

 Issue five: Vega's written statement does not contain a certificate by a
magistrate that Vega knowingly, intelligently and voluntarily waived her
rights before making the statement as required by section 51.09; (9)

 Issue six: Vega was never advised of her rights by a magistrate before
being interrogated as set out in section 51.09; (10)

 Issue seven: Vega was never presented before a magistrate at any time
before giving her statement as provided for in section 51.09; (11)


 Issue nine: Vega was detained for more than six hours before the
conclusion of her statement in violation of section 52.025; (12)

 Issue ten: Vega's statement was not signed in the presence of a
magistrate with no law enforcement officer present as required by
section 51.09; (13)


 Issue eleven: Vega's statement was signed in the presence of at least
one law enforcement official who was armed in violation of section
51.09; (14) and

 Issue thirteen: Vega was improperly left unattended in the interview in
violation of section 52.025. (15)


 In remanding these issues, the court of criminal appeals determined that the
following circumstances violated provisions of Title 3:

 Vega arrived at the police station at about 10:45 a.m. Her written
statement was signed at about 9:40 p.m. As permitted by Illinois law,
the youth officer who presided at the signing was an armed police
officer. Vega was left alone in the interrogation room for several periods
before she was taken to the juvenile holding facility. From the record at
hand, it appears that Vega was not taken before a magistrate.

Vega, 84 S.W.3d at 618. The court further concluded, however, that a violation of
the family code, in this particular case, did not necessarily dispose of the issue of
admissibility. Id.





a. Absence of a Magistrate


 We first address the five issues that complain of the absence of a
magistrate--issues five, six, seven, ten, and eleven. (16) The version of section 51.09
in effect at the relevant time provided in part:

 (a) Unless a contrary intent clearly appears elsewhere in this title, any
right granted to a child by this title or by the constitution or laws of this
state or the United States may be waived in proceedings under this title
if:


 (1) the waiver is made by the child and the attorney for the child;


 (2) the child and the attorney waiving the right are informed of and
understand the right and the possible consequences of waiving it;


 (3) the waiver is voluntary; and


 (4) the waiver is made in writing or in court proceedings that are
recorded.


 (b) Notwithstanding any of the provisions of Subsection (a) of this
section, the statement of a child is admissible in evidence in any future
proceeding concerning the matter about which the statement was given
if:


 (1) when the child is in a detention facility or other place of confinement
or in the custody of an officer, the statement is made in writing and the
statement shows that the child has at some time prior to the making
thereof received from a magistrate a warning that:


 (A) the child may remain silent and not make any statement at all and
that any statement the child makes may be used in evidence against the
child;


 (B) the child has the right to have an attorney present to advise the child
either prior to any questioning or during the questioning;

 

 (C) if the child is unable to employ an attorney, the child has the right to
have an attorney to counsel with the child prior to or during any
interviews with peace officers or attorneys representing the state;

 

 (D) the child has the right to terminate the interview at any time;

 

 (E) if the child is 15 years of age or older at the time of the violation of
a penal law of the grade of felony the juvenile court may waive its
jurisdiction and the child may be tried as an adult;

 

 (F) the child may be sentenced to commitment in the Texas Youth
Commission with a transfer to the institutional division of the Texas
Department of Criminal Justice for a term not to exceed 30 years if the
child is found to have engaged in delinquent conduct, alleged in a petition
approved by a grand jury, that included:


 (1) murder;

 

 (2) capital murder;

 

 (3) aggravated kidnaping;

 

 (4) aggravated sexual assault;

 

 (5) deadly assault on a law enforcement officer, corrections officer, court
participant or probation personnel; or

 

 (6) attempted capital murder; and

 

 (G) the statement must be signed in the presence of a magistrate by the
child with no law enforcement officer or prosecuting attorney present,
except that a magistrate may require a bailiff or a law enforcement
officer if a bailiff is not available to be present if the magistrate
determines that the presence of the bailiff or law enforcement officer is
necessary for the personal safety of the magistrate or other court
personnel, provided that the bailiff or law enforcement officer may not
carry a weapon in the presence of the child. The magistrate must be fully
convinced that the child understands the nature and contents of the
statement and that the child is signing the same voluntarily. If such a
statement is taken, the magistrate shall sign a written statement verifying
the foregoing requisites have been met.

 

 The child must knowingly, intelligently and voluntarily waive these rights
prior to and during the making of the statement and sign the statement
in the presence of a magistrate who must certify that he has examined
the child independent of any law enforcement officer or prosecuting
attorney, except as required to ensure the personal safety of the
magistrate or other court personnel, and has determined that the child
understands the nature and contents of the statement and has
knowingly, intelligently and voluntarily waived these rights.


Act of May 22, 1991, 72nd Leg., ch. 429, § 1, eff. Sept. 1, 1991; Act of May 24,
1991, 72nd Leg., ch. 557, § 1, eff. Sept. 1, 1991; Act of May 27, 1991, 72nd Leg.,
ch. 593, § 1, eff. Aug. 26, 1991 (emphasis added) (current version at Tex. Code Crim.
Proc. Ann. § 51.09 (Vernon 2002), § 51.095 (Vernon Supp. 2006)).

 On remand, the court of criminal appeals has directed this Court to analyze the
effect of the absence of a magistrate on the admissibility of the challenged statement
in a context of fairness to the parties, focusing on the purpose expressed in section
51.01 of the family code, which is "to provide a simple judicial procedure through
which the provisions of this title are executed and enforced and in which the parties
are assured a fair hearing and their constitutional and other legal rights recognized and
enforced." Vega, 84 S.W.3d at 619 (quoting Acts 1973, 63rd Leg., p. 1460, ch.
554, § 1, eff. Sept. 1, 1973).

 Our analysis begins with the word, "fair." It is not defined by statute; therefore,
we must give the language its plain and ordinary meaning. See Tex. Gov't Code Ann.
§ 312.002(a) (Vernon 2005); In re Kasschau, 11 S.W.3d 305, 311 (Tex.
App.-Houston [14th Dist.] 1999, no pet.); Nevarez v. State, 767 S.W.2d 766, 768
(Tex. Crim. App. 1989) (en banc). Black's Law Dictionary defines "fair" as "1.
Impartial; just; equitable; disinterested," and "2. Free of bias or prejudice." Black's
Law Dictionary 505 (8th ed. 2004). The Supreme Court of Wyoming clarifies the
definition by comparing "fair" with the following similar terms:


 FAIR, the most general of the terms, implies a disposition in a person or
group to achieve a fitting and right balance of claims or considerations
that is free from undue favoritism even to oneself, or implies a quality or
result in an action befitting such a disposition.


 * * * * * *


 JUST stresses, more than FAIR, a disposition to conform with or
conformity with the standard of what is right, true, or lawful, despite
strong, esp. personal, influences tending to subvert that conformity . . .
(a just statement of the facts) . . . .


 * * * * *


 IMPARTIAL stresses an absence of favor or prejudice in judgment.


Casteel v. News-Record, Inc., 875 P.2d 21, 24 (Wyo. 1994) (emphasis added) (citing
Webster's Third New International Dictionary (1971)). The ordinary and obvious
meaning of fair does not require that the process, which in this case is the process
utilized to obtain Vega's statement, be precise or accurate. See id. (concluding that
the meaning of fair does not require the report to be true or accurate). What is
required is that the process have the qualities of impartiality and honesty. See id. It
is a process that is free from prejudice, favoritism, and self-interest. See id. These
parameters help define what is a fitting and right balance of considerations. Therefore,
determining fairness to Vega and the State, we ask whether the process of taking
Vega's statement in Illinois in the absence of a magistrate was exercised and enforced
in a manner that achieved a fitting and right balance of considerations such that both
parties were assured a fair hearing where the parties' legal rights were recognized and
enforced.

 In order to identify Vega's considerations, we must review the responsibilities
of the magistrate as set out in section 51.09 of the family code. (17) Under section
51.09, the magistrate is to ascertain whether the accused juvenile wishes to waive her
constitutional rights. Hill v. State, 78 S.W.3d 374, 386 (Tex. App.-Tyler 2001, pet.
ref'd). Section 51.09 provides that the magistrate must provide appropriate warnings
to the juvenile before the making of the statement. (18) See Act of May 22, 1991, 72nd
Leg., ch. 429, § 1, eff. Sept. 1, 1991; Act of May 24, 1991, 72nd Leg., ch. 557, §
1, eff. Sept. 1, 1991; Act of May 27, 1991, 72nd Leg., ch. 593, § 1, eff. Aug. 26,
1991. The statement must be signed in the presence of the magistrate with no law
enforcement officer or prosecuting attorney present except for a bailiff or law
enforcement officer who is unarmed, if the magistrate determines it necessary. Id.;
see Berkemer v. McCarty, 468 U.S. 420, 438 (1984) ("The authority of an armed,
uniformed officer exerts some pressure to respond to questions."); Ancira v. State,
516 S.W.2d 924, 926 (Tex. Crim. App. 1974) (holding that potential for compulsion
existed when an armed officer interviewed a suspect who was detained inside a police
vehicle). Additionally, the magistrate must certify that she has determined "that the
child understands the nature and contents of the statement and has knowingly,
intelligently, and voluntarily waived these rights." See Act of May 22, 1991, 72nd
Leg., ch. 429, § 1, eff. Sept. 1, 1991; Act of May 24, 1991, 72nd Leg., ch. 557, §
1, eff. Sept. 1, 1991; Act of May 27, 1991, 72nd Leg., ch. 593, § 1, eff. Aug. 26,
1991.

 Therefore, under section 51.09, Vega's considerations involve her legal right to
have her constitutional rights thoroughly explained so that any waiver of those rights
is made voluntarily and uncoerced, and knowingly and intelligently. (19) See id. An
additional consideration under section 51.09 is to reduce the impact of armed law
enforcement personnel on Vega. See id. Also, under section 51.01, Vega's
considerations include being assured that a fair hearing will result from the simple
judicial procedure through which this statutory right is recognized, executed, and
enforced. See Acts 1973, 63rd Leg., p. 1460, ch. 554, § 1, eff. Sept. 1, 1973.

(1) Voluntary and Uncoerced

 A voluntary statement is the product of a free and deliberate choice rather than
intimidation, coercion, or deception. See Moran v. Burbine, 475 U.S. 412, 421
(1986). A court must examine the totality of the circumstances surrounding the
interrogation to determine if a confession was voluntary and uncoerced. See id.;
Ashcraft v. State, 934 S.W.2d 727, 738 (Tex. App.-Corpus Christi 1996, pet. ref'd).

 At the motion to suppress hearing, Detective Gregory Biochi testified that he
issued Miranda warnings to Vega during her first interview with law enforcement
officers at 12:45 p.m. Vega did not ask for an attorney or seek to remain silent;
instead, she agreed to talk. Assistant State's Attorney Michael Falagario interviewed
Vega at 3:30 p.m. ASA Falagario testified that he advised Vega of her rights and
explained that he was a prosecutor, an attorney assisting the police, and not Vega's
attorney. Vega said that she understood who he was. ASA Falagario testified that
he spoke to Vega alone to make sure she was being treated "okay," that she did not
need anything, and that she had no complaints. He explained to Vega the possibilities
concerning giving a statement. Vega said that she had been treated well, and agreed
to give a handwritten statement. After Vega agreed to make a statement, ASA
Falagario left the interview room in order to take a statement from Nonn and did not
return until 7:30 p.m. when he took Vega's statement.

 Chicago Police Youth Officer Linda Paraday introduced herself to Vega at
approximately 4:00 p.m. and read Vega her rights. Youth Officer Paraday also
informed Vega that she would be tried as an adult. Vega replied that she had heard
those warnings before. Youth Officer Paraday talked with Vega while they waited for
ASA Falagario, and she explained to Vega that she was there for her if she needed
anything. Youth Officer Paraday testified that she wore a weapon under her blazer,
but it was not visible to Vega.

 When ASA Falagario returned to the interview room at 7:30 p.m., he again
asked Vega if she wanted to give a statement. Vega indicated that she wanted to give
a handwritten statement. ASA Falagario read the written warnings on the statement
form to Vega, and he also included the warning that she would be tried as an adult. 
Vega never said that she wanted to remain silent or asked for an attorney and, instead,
agreed to talk to the prosecutor. ASA Falagario explained that he was going to write
down what Vega was saying as she told him what had happened. He also told Vega
he would make any changes, corrections, or additions she wanted. The following
written warnings were given:

 I understand that I have the right to remain silent and that anything I say
can be used against me in a court of law. I understand that I have the
right to talk to a lawyer and have him present with me during
questioning, and if I cannot afford to hire a lawyer one will be appointed
by the court to represent me before any questioning. I understand that
although I am 16 years [sic] I will be tried as an adult.


 Understanding these rights, I wish to give a statement.


After saying that she understood the above warnings and wanted to make a
statement, Vega signed on the line below the warnings. ASA Falagario wrote out
Vega's statement as Vega told him what happened. Youth Officer Paraday, who was
present when Vega made her statement, noted that a detective interrupted the taking
of the statement to inform them that Vega's mother had called. The State's attorney
asked Vega if she wanted to talk to her mother, and, after Vega said that she wanted
to do so, Youth Officer Paraday took Vega to a phone. Vega did not ask to stop or to
be given an attorney after talking with her mother. She, instead, continued with the
statement.

 When ASA Falagario finished writing the statement, Vega read the warnings and
the first paragraph of the statement aloud. ASA Falagario read the rest of the
statement as Vega followed along. Vega requested changes and corrections to the
statement, which ASA Falagario made. After Vega was satisfied with the changes
and corrections, she signed each page of the statement. Youth Officer Paraday
testified that no one used any tricks, coercion, or promises to get Vega to sign the
statement.

 Considering all of the testimony in the record, the totality of the circumstances
surrounding Vega's interrogation suggests that her statement was the product of a
free and deliberate choice rather than intimidation, coercion, or deception. See Moran,
475 U.S. at 421. Vega's rights were explained to her. In addition, before making her
statement, Vega was read the written warnings on the statement, stated that she
understood the warnings, and signed on the line below the warnings. Vega never
invoked her right to remain silent or to seek counsel. ASA Falagario and Youth Officer
Paraday testified that they each spoke with Vega privately and asked if she was being
treated okay and if she needed anything. During these discussions, Vega did not make
any indication that she was treated unfairly or was coerced in any way. Vega was
also allowed to speak with her mother before signing the statement. Furthermore,
because Youth Officer Paraday's weapon was not visible to Vega, its presence during
the making of the statement does not suggest coercion. Accordingly, we conclude
that Vega's statement was voluntary and uncoerced.

(2) Knowingly and Intelligently

 To knowingly and intelligently abandon a constitutional right, the accused must
be aware of both the nature of the right being abandoned and the consequences of the
decision to abandon it. See id. A court must examine the totality of the
circumstances surrounding the interrogation to determine if the accused had the
requisite level of comprehension to knowingly and intelligently abandon a constitutional
right. See id.; Ashcraft, 934 S.W.2d at 738.

 In addition to the facts set out above, Youth Officer Paraday testified that Vega
appeared very bright and rather calm and matter-of-fact. Vega indicated that she
understood the warnings. She also had the opportunity to read warnings aloud before
she signed the statement.

 Considering all of the testimony in the record, the totality of the circumstances
surrounding the interrogation suggests that Vega was aware of both the nature of the
rights that she abandoned and the consequences of the decision to abandon those
rights. See Moran, 475 U.S. at 421. We therefore conclude that Vega made her
statement knowingly and intelligently.

 Accordingly, Vega's legal rights were explained to her so that her statement
was made voluntarily, uncoerced, knowingly, and intelligently. We cannot conclude
that Vega's considerations were affected by the absence of a magistrate. The
procedures utilized were sufficient to carry out the underlying purpose of the Texas
requirements. We therefore conclude that Vega's constitutional and other legal rights
were recognized and enforced, and she was assured a fair hearing as directed by
section 51.01 of the family code.

 Vega contends that Texas law enforcement officers should have explained the
provisions of the Texas Family Code to the Illinois authorities so that they would
employ the correct procedures. However, this would have placed an extreme burden
on the Texas and Illinois authorities. Out-of-state law enforcement personnel are not
expected to learn and apply the intricacies of Texas statutory law or vice versa. It
would be nearly impossible for Texas authorities to fully explain the necessary
procedures to be followed when questioning a juvenile to authorities in every state that
may apprehend a juvenile for a crime committed in Texas. Also, Texas law
enforcement officers have no control over the actions of authorities in other states. 
Finally, as noted by the court of criminal appeals, since the identified violations of the
Texas Family Code were committed by Illinois law enforcement officers, excluding
Vega's statement would not deter Illinois law enforcement officers from future
violations because the Illinois police will continue to comply with their own laws and
procedures. See Vega, 84 S.W. at 619 (citing State v. Mayorga, 901 S.W.2d 943,
946 (Tex. Crim. App. 1995)). A ruling that the statement was properly admitted is
most consistent with principles of "fairness" to all involved. The circumstances
surrounding the taking of Vega's statement, although in violation of Texas statutes,
upheld the constitutional rights the Texas procedures were designed to protect.

 Vega argues that the Texas officials should have advised the Illinois authorities
of Texas's procedures for taking juvenile statements. This ignores a number of
practical concerns at the time, including the lack of any clear precedent concerning
which state's procedures should apply. She asserts that said officers should have so
analyzed a complex legal issue that this Court is still reviewing. This argument also
ignores significant practical concerns, such as the need to not only decide that Texas
law applies, but rather to also convince the Illinois authorities, including a magistrate,
to follow Texas law rather than Illinois law. It also does not recognize that an Illinois
magistrate would have had to educate himself concerning the role a magistrate plays
under Texas juvenile law and also that the magistrate and everyone else involved
would have had to then properly carry out their unfamiliar role under said law.

 Vega contends that a plain reading of section 51.09 evinces a desire by the
legislature to protect juveniles' rights and elevate those rights above those accorded
an adult. She contends that the legislature intended to protect children from coercion,
and that the presence of a magistrate is a safeguard against the waiver of a juvenile's
rights by those minors who lack the experience or judgment to waive them. We
believe, however, that Vega's statutory rights were protected when, in the absence
of a magistrate, Illinois authorities spoke with Vega and determined that she not only
understood the nature and contents of her statement, but that she was also signing
it knowingly, intelligently, and voluntarily. Vega was afforded the procedural
safeguards of the family code.

 The Texas provisions are not constitutionally mandated; they were added to
provide a mechanism to make sure that a juvenile's right against self-incrimination was
protected when an attorney was not present during questioning. The underlying
purposes of the Texas requirements were accomplished and Vega's constitutional
rights upheld. The process of taking Vega's statement in Illinois in the absence of a
magistrate was exercised and enforced in a manner that achieved a fitting and right
balance of considerations such that both parties were assured a fair hearing where the
parties' legal rights were recognized and enforced. While the process was not precise
and violations of the Texas Family Code occurred, based on the record before us, the
process was fair to both Vega and the State. It was impartial, honest, and free from
prejudice, undue favoritism, and self-interest. See Casteel, 875 P.2d at 24. It
achieved a fitting and right balance of considerations. Id.

 Our evaluation of the "fairness" issue compels a conclusion that Vega's
statement was properly admitted under Texas law. Accordingly, we conclude the trial
court correctly determined that those actions adequately protected Vega,
notwithstanding the absence of the magistrate, making the statement admissible. 
Thus, the trial court did not err in denying her motion to suppress. We overrule issues
five, six, seven, ten, and eleven.

b. Section 52.025 Violations

 In issues nine and thirteen, Vega contends that her statement should be
suppressed because the Illinois authorities violated section 52.025 of the family code. 
Specifically, she contends that she was detained more than six hours before the
conclusion of her statement, (20) and that she was improperly left unattended in the
interview room. (21) See Acts 1991, 72nd Leg., ch. 495, § 2, eff. Sept. 1, 1991
(current version at Tex. Fam. Code Ann. § 52.025 (Vernon 2002)). The court of
criminal appeals agreed that these circumstances violated provisions of Title 3,
specifically those found in section 52.025. See Vega, 84 S.W.3d at 619.

 However, unlike section 51.095(a) discussed above, section 52.025 is not an
independent exclusionary statute. Gonzales v. State, 67 S.W.3d 910, 912 (Tex. Crim.
App. 2002). Therefore, as the court of criminal appeals explained in Gonzales, in order
for a juvenile's written statement to be suppressed because of a section 52.025
violation, there must be some exclusionary mechanism. Id. That mechanism is
section 51.17 of the family code which provides that "Chapter 38, Code of Criminal
Procedure, applies in a judicial proceeding under this title." Id. Thus, at the direction
of the Gonzales Court, "if evidence is to be excluded because of a section 52.025
violation, it must be excluded through the operation of article 38.23(a)." Id.

 Article 38.23(a) provides that "[n]o evidence obtained by an officer or
other person in violation of any provisions of the Constitution or laws of
the State of Texas . . . shall be admitted in evidence." Our decisions
have established that evidence is not "obtained . . . in violation" of a
provision of law if there is no causal connection between the illegal
conduct and the acquisition of the evidence.


Id. The defendant has the burden to show a causal connection between that violation
and her ensuing confession. Gonzales v. State, 125 S.W.3d 616, 619 (Tex.
App.--Houston [1st Dist.] 2003) (en banc), aff'd sub nom. Pham v. State, 175
S.W.3d 767 (Tex. Crim. App. 2005).

 Here, Vega had the burden to prove that the violations of section 52.025
caused her to make her statement. Although Vega acknowledges the causal
connection requirement, she has not claimed that these violations caused her to give
her statement. Further, even had she raised this contention, Vega points to no
evidence in the record demonstrating a causal connection between the violations and
her decision to give a statement to the police, and we have found none. Accordingly,
we overrule issues nine and thirteen.

III. Illinois Law

 By her fourteenth issue, Vega complains that, should this Court determine that
Illinois law rather than Texas law should govern the admissibility of the instant
statement, the trial court erred in overruling Vega's motion to suppress evidence
because the authorities did not comply with Illinois law in taking her statement. As
set out above, the court of criminal appeals determined that Texas law, not Illinois law,
applies. Vega, 84 S.W.3d at 617; see also id. at 621 (Keller, J., dissenting). 
Therefore, we find it unnecessary to address this issue. See Tex. R. App. P. 47.1.

IV. Arrest Warrant and Supporting Affidavit

 By her fifteenth issue, Vega contends that the trial court erred in overruling her
motion to suppress evidence because the arrest warrant and supporting affidavit were
not introduced into evidence and because the State failed to present facts otherwise
justifying her detention, in violation of the Fourth Amendment to the United States
Constitution. By issue sixteen, Vega brings the same contention alleging a violation
of article I, section 9 of the Texas Constitution, and article 38.23 of the Texas Code
of Criminal Procedure.

 A trial judge is the sole trier of fact at a suppression hearing and thus
evaluates witness testimony and credibility. Maxwell v. State, 73
S.W.3d 278, 281 (Tex. Crim. App. 2002) (citing Allridge v. State, 850
S.W.2d 471, 493 (Tex. Crim. App. 1991)). When we review a trial
court's ruling on a motion to suppress, we give great deference to the
trial court's determination of historical facts while reviewing the court's
application of the law de novo. Maxwell, 73 S.W.3d at 281 (citing
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)). The
appellate court must view the evidence in a light most favorable to the
trial court's ruling when the trial court does not file any findings of fact. 
Id. When, as here, no such findings of fact were made, the appellate
court will assume that the trial court made implicit findings of fact that
support its ruling, as long as the findings are supported by the record. 
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990) [(en
banc)].


Torres v. State, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005).

 Vega argues that the testimony adduced at the motion to suppress hearing
failed to show any facts or circumstances under which Vega was wanted in Texas,
and the warrant and supporting affidavit were never introduced; thus, the State failed
to sustain its burden of proof. However, at the suppression hearing in this case, the
"LEADS" message received by the Illinois police from Starr County, Texas, that noted
Vega and Nonn had outstanding warrants in Texas for aggravated kidnaping and
murder was read into the record. Detective Chernikovich testified that at
approximately 11:30 a.m. on the day Vega was picked up, he was faxed copies of the
warrants, the affidavits reporting the warrants for arrest, and an incident report
regarding an abandoned vehicle that contained a deceased victim. Detective
Chernikovich also testified that he had a conversation with a Texas officer, in which
he "had mentioned that they had obtained some pawnshop receipts with Jaime Nunn's
[sic] signature on it [sic]." Moreover, under section 52.01(a)(3) of the Texas Family
Code, in effect at the time of the arrest, a child could be taken into custody by a law-enforcement officer if there were reasonable grounds to believe that the child had
engaged in conduct that violated a penal law of this State or delinquent conduct or
conduct indicating a need for supervision. See Acts 1993, 73rd Leg., ch. 115, § 2,
eff. May 11, 1993 (current version at Tex. Fam. Code Ann. § 52.01(a)(3)(A), (B)
(Vernon Supp. 2006)). Giving great deference to the trial court's determination of
historical facts, reviewing the court's application of the law de novo, and viewing the
evidence in a light most favorable to the trial court's ruling, see Torres, 182 S.W.3d
at 902, we conclude that the trial court did not err in denying Vega's motion to
suppress on this basis. We overrule issues fifteen and sixteen.

V. Rule 404(b) and 403 Objections to Extraneous Offense Testimony

 In issue seventeen, Vega contends that the trial court erred in admitting
evidence of extraneous offenses in violation of Texas Rules of Evidence 404(b) and
403--that the extraneous offense evidence was irrelevant and that the probative
value, if any, was substantially outweighed by the danger of unfair prejudice. See Tex.
R. Evid. 403, 404(b). Vega contends that the admission of testimony regarding her
use of drugs and alcohol, having sex with an older man, running away from home, and
being a liar, was harmful--that it effectively diverted the jury's attention from the
issues in this case. Vega asserts that these errors affected her substantial rights;
depriving her of a fair trial at the guilt/innocence and punishment phases, a trial that
resulted in an automatic life sentence for capital murder and twenty-year sentences
for aggravated robbery and aggravated kidnaping. See Tex. R. App. P. 44.2(b).

A. The Law

 When reviewing a trial court's ruling on the admission of evidence, an
appellate court applies an abuse of discretion standard of review. 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)
(op. on reh'g) [(en banc)]. A trial court abuses its discretion when its
decision lies outside the zone of reasonable disagreement. Green v.
State, 934 S.W.2d 92, 101-102 (Tex. Crim. App. 1996).


Casey v. State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).

 Evidence that does not have relevance apart from character conformity
is inadmissible. Tex. R. Evid. 404(b). Extraneous-offense evidence is not
inadmissible under Rule 404(b) if the extraneous-offense evidence is
relevant to a fact of consequence apart from its tendency to show
conduct in conformity with character. Johnston v. State, 145 S.W.3d
215 (Tex. Crim. App. 2004). Extraneous-offense evidence is not
inadmissible under Rule 404(b) when it is offered to rebut an affirmative
defense or a defensive issue that negates one of the elements of the
crime. Id.; Powell v. State, 63 S.W.3d 435, 438-440 (Tex. Crim. App.
2001).

Id. Once a trial court determines the uncharged misconduct evidence is not barred
under rule 404(b), the opponent of the evidence may further object under rule
403--that the probative value of the evidence is substantially outweighed by the
danger of unfair prejudice. Id. Once a rule 403 objection is made, the trial court
balances:

 (1) the inherent probative force of the proffered item of evidence along
with (2) the proponent's need for that evidence against (3) any tendency
of the evidence to suggest decision on an improper basis, (4) any
tendency of the evidence to confuse or distract the jury from the main
issues, (5) any tendency of the evidence to be given undue weight by a
jury that has not been equipped to evaluate the probative force of the
evidence, and (6) the likelihood that presentation of the evidence will
consume an inordinate amount of time or repeat evidence already
admitted.


Id. (citing Gigliobianco v. State, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006)
(noting the factors may blend together in practice)).

B. Challenge to Testimony

 On direct examination, Vega testified that she used drugs and alcohol, came
from an erratic family background, lied about being pregnant, had been raped the night
before her crime spree, and that her husband, an older man, was abusive. Through
her testimony Vega suggested, as the defense claimed, that her state of mind was one
of helplessness, that she was essentially under Nonn's control. Vega also testified
that she loved Nonn, that he was always there for her, and that she forgave him. 
During cross-examination, the State again elicited testimony from Vega regarding drug
and alcohol use, having sex with an older man, her alleged pregnancy, running away
from home, and being a liar.

 After Vega objected to the State's questions on the basis of rules 403 and
404(b), in a bench conference outside the presence of the jury, the State addressed
the trial court as follows:

 [The defense] put on this witness [appellant], and they have gone on and
testified about her history from here to eternity. We're seeking to correct
misimpressions they've laid as to what this girl was doing at the time. 
The only thing she was doing was drugs. It's not our case-in-chief. It's
their witness, they put her on. She's subject to cross-examination. 
We're cross-examining her.

The State continued, "They've raised this issue about some kind of mental state that
she was in at the time this happened, and if she was using drugs at the time, that
goes to her mental state." The trial court then stated, "I'm going to allow it in."

C. Rule 404(b) Objection

 As the State represented to the trial court, the testimony elicited by the State
was to rebut Vega's claim that she did not make her own choices in life. She chose
to marry an older man and, thus, had sex with an older man. Vega ran away from
home. She put her maturity, sophistication, and independence at issue by claiming she
was under Nonn's control. The evidence established that Vega could escape from
situations she did not want to be in; that she was not helpless and not under the
control of another; and that she could make her own choices at the time in question. 
See Johnston, 145 S.W.3d at 219. Further, the fact that Vega lied about being
pregnant, which "necessitated" a marriage, went to Vega's ability to tell the truth; the
use of drugs went to Vega's then-existing state of mind. The evidence was also
offered to rebut a defensive issue that negates one of the elements of the
crime--intent. Id.; Powell, 63 S.W.3d at 438-40; see Tex. Penal Code Ann. § 19.03
(Vernon Supp. 2006), §§ 20.04, 29.03 (Vernon 2003) (setting out intent as an
element of each offense).

 We conclude that the trial court's decision that the evidence was relevant lies
within the zone of reasonable disagreement. See Montgomery, 810 S.W.2d at 291;
see also Tex. R. Evid. 404(b). The extraneous-offense evidence was relevant to a fact
of consequence apart from its tendency to show conduct in conformity with character.
Thus, we conclude the trial court's determination that the evidence was relevant was
not an abuse of discretion. See Montgomery, 810 S.W.2d at 291.

D. Rule 403 Objection

 Vega cites to Crank v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988),
overruled on other grounds, Alford v. State, 866 S.W.2d 619, 624 n.8 (Tex. Crim.
App. 1993) (en banc), for the well-settled proposition that evidence of extraneous
offenses is "inherently prejudicial, tends to confuse the issues in the case, and forces
the accused to defend himself against charges which he had not been notified would
be brought against him." Without more, Vega contends only that, through extraneous-offense testimony elicited by the State regarding her being a criminal generally, her
substantial rights were affected. See Tex. R. App. P. 38.1(h) (providing that this Court
will only consider contentions that are supported by clear and concise arguments with
appropriate citations to authorities and to the record). Nonetheless, we cannot
determine that Vega was prejudiced, that the issues were confused, and that she was
forced to defend herself against charges against which she had not been notified,
when Vega testified to the same matters on direct examination. We conclude the trial
court did not abuse its discretion when it determined that the probative value of the
evidence was not substantially outweighed by the danger of unfair prejudice.

 Accordingly, we overrule Vega's seventeenth issue.

VI. Limiting Instruction for Extraneous Offense Testimony

 By her eighteenth issue, Vega contends the trial court erred when it instructed
the jury that it could "consider the extraneous offenses in determining the maturity,
sophistication and independence of Appellant in connection with the offense." Vega
argues that the instruction was inappropriate because those bases were not relevant
to any material issue in the case. However, Vega testified to the same matters on
direct examination. Vega put her maturity, sophistication, and independence at issue
by claiming she was under Nonn's control. Thus, it became a material issue. The jury
was instructed for what purposes it could consider the extraneous offenses. 
"Generally, we presume the jury follows the trial court's instructions and that a limiting
instruction cures any harm." Moore v. State, 882 S.W.2d 844, 847 (Tex. Crim. App.
1994) (en banc). Therefore, even if the trial court erred in allowing any of the
testimony into evidence, any error was harmless because the instruction, which we
presume the jury followed, identified material issues for which the evidence could be
considered under rule 404(b). Moreover, Vega offers no evidence rebutting the above
presumption. See Thrift v. State, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005)
(providing that the presumption may be rebutted, but only by evidence that the jury
disregarded the judge's instructions). Rather, Vega only appears to suggest that her
sentence was excessive because she received an automatic life sentence for capital
murder, and twenty-year sentences for aggravated robbery and aggravated kidnaping. 
We overrule Vega's eighteenth issue.

VII. Conclusion

 Accordingly, we affirm the judgment of the trial court.

 

 NELDA V. RODRIGUEZ

 Justice


Publish. 

Tex. R. App. P. 47.2(b).


Opinion on Remand delivered and 

filed this 9th day of August, 2007.
1. Justice Federico G. Hinojosa, Jr., whose term ended on December 31, 2006, not participating.
2. Nonn was later convicted, and his conviction was upheld by this Court and the court of criminal
appeals. See Nonn v. State, 117 S.W.3d 874, 875, 883 (Tex. Crim. App. 2003) (setting out history
of case and affirming).
3. The Vega Court summarized its holding in Davidson as follows:


 [B]ecause art. 38.22 § 3(a) of the Texas Code of Criminal Procedure was procedural in
nature, a trial judge is required to apply Texas law to determine the admissibility of an
oral confession obtained in another state. [The Davidson Court] also held that because
the mandatory requirement of art. 38.22 §3(a), that an oral custodial statement must
be recorded before it can be used against a defendant, was not followed by the
authorities in Montana, appellant's oral confession was inadmissible at his Texas trial.


Vega v. State, 84 S.W.3d 613, 616 (Tex. Crim. App. 2002) ( en banc) (citing Davidson v. State, 25
S.W.3d 183, 185-86 n.2 (Tex. Crim. App. 2000)). In Vega, the court of criminal appeals concluded
Davidson did not apply because (1) the challenged statement was written and, thus, did not violate the
provisions of article 38.22, and (2) "pursuant to the Code Construction Act, the sections of the Family
Code relevant to confessions prevail over art[icle] 38.22." Id.
4. The court of criminal appeals reasoned that the question of which directives in Title 3 are
substantive and which are procedural is not relevant because, if procedural in nature, the issues are
governed by the laws of the forum state, or Texas in this instance, and, if substantive in nature, the
conflict-of-law schemes of both Illinois and Texas militate for the application of Texas substantive law. 
See Vega, 84 S.W.3d at 617. The court arrived at its Texas substantive law conclusion by considering
five factors Texas courts review in determining which forum has the most significant relationship to the
case and by deciding that four of the five factors, including (1) where the injury or unlawful conduct
occurred, (2) the place where the relationship between the parties is the strongest, (3) the number and
nature of contacts that the non-forum state has with the parties and with the transaction involved, and
(4) the relative materiality of the evidence that is sought to be excluded, favor Texas law, and that only
resolution of the issue of fairness, the fifth factor, was not obvious. See id. (citing Restatement
(Second) of Conflict of Laws §§ 6, 145 (1971); Gonzalez, 45 S.W.3d 101, 104 n.4 (Tex. Crim. App.
2001) (citing Restatement (Second) of Conflict of Laws § 139 (1971)). Because Illinois has a similar
method of determining which state has the most significant relationship to the case, the court of criminal
appeals determined that all of the Illinois factors also favored application of Texas law to the substantive
issues. See id.
5. In 1994, section 51.01 read as follows:


 This title shall be construed to effectuate the following public purposes:


 (1) to provide for the care, the protection, and the wholesome moral,
mental, and physical development of children coming within its
provisions;


 (2) to protect the welfare of the community and to control the
commission of unlawful acts by children;


 (3) consistent with the protection of the public interest, to remove the
children committing unlawful acts the taint of criminality and the
consequences of criminal behavior and to substitute a program of
treatment, training, and rehabilitation;


 (4) to achieve the foregoing purposes in a family environment whenever
possible, separating the child from his parents only when necessary for
his welfare or in the interest of public safety and when a child is
removed from his family, to give him the care that should be provided
by parents; and


 (5) to provide a simple judicial procedure through which the provisions
of this title are executed and enforced and in which the parties are
assured a fair hearing and their constitutional and other legal rights
recognized and enforced.


Acts 1973, 63rd Leg., p. 1460, ch. 554, § 1, eff. Sept. 1, 1973 (current version at Tex. Fam. Code
Ann. § 51.01 (Vernon 2002)). The court of criminal appeals asks only that we focus on subsection (5). 
Id. Therefore, we will limit our review to the purpose expressed in that subsection.
6. Now Tex. Fam. Code Ann. §52.02(a) (Vernon Supp. 2006), §§ 52.025 & 51.12 (Vernon 2002).
7. Now Tex. Fam. Code Ann. § 51.095 (Vernon Supp. 2006).
8. Now Tex. Fam. Code Ann. § 51.12(a) (Vernon 2002).
9. Now Tex. Fam. Code Ann. § 51.095(a)(1)(D) (Vernon Supp. 2006).
10. Now Tex. Fam. Code Ann. § 51.095(a)(1)(A) (Vernon Supp. 2006).
11. Now Tex. Fam. Code Ann. § 51.095(a)(1)(A)-(C) (Vernon Supp. 2006).
12. Now Tex. Fam. Code Ann. § 52.025(d) (Vernon 2002).
13. Now Tex. Fam. Code Ann. § 51.095(a)(1)(B)(i) (Vernon Supp. 2006).
14. Now Tex. Fam. Code Ann. § 51.095(a)(1)(B)(i) (Vernon Supp. 2006).
15. Now Tex. Fam. Code Ann. § 52.025(c) (Vernon 2002).
16. Issues nine and thirteen involve violations of section 52.025 of the family code and will be
addressed separately.
17. For convenience, we will refer only to section 51.09 as it was written at the time Vega gave
her statement.
18. In reviewing Vega's fourth issue, the court of criminal appeals determined that the warnings
Vega received were sufficient to comply with Texas law to the extent necessary to carry out Texas's
intended purpose and public policy. Therefore, we do not address the sufficiency of the Miranda
warnings; rather, we address the absence of a magistrate during the warnings.
19. While arguing that provisions of the family code were violated, Vega does not contend that her
constitutional rights were violated.
20. Now Tex. Fam. Code Ann. § 52.025(d) (Vernon 2002).
21. Now Tex. Fam. Code Ann. § 52.025(c) (Vernon 2002).